UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BILLIE THOMPSON, as personal representative of the ESTATE OF DUSTY HEISHMAN, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 1:15-cv-01712-TWP-DML ) |
| CITY OF INDIANAPOLIS, INDIANAPOLIS DEPARTMENT OF PUBLIC SAFETY, INDIANAPOLIS METROPOLITAN POLICE DEPARTMENT, BRIAN BURNETT, DONALD SPIEGL, WILLIAM BUECKERS, PHILLIP GREENE, MARION COUNTY SHERIFF'S DEPARTMENT, BILLY JOHNSON, HEALTH AND HOSPITAL CORPORATION OF MARION COUNTY, LANCE COPE, MARK BRITTON, and WILLIAM PATTERSON, | ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

**ENTRY ON MEDICAL DEFENDANTS' MOTION FOR RECONSIDERATION**

This matter is before the Court on a Motion for Reconsideration filed by Defendants Health and Hospital Corporation of Marion County ("HHC") and Lance Cope ("Medic Cope") (collectively, "Medical Defendants") (Filing No. 59). Following a partial motion to dismiss filed by the Medical Defendants, the Court dismissed the state law wrongful death claim against HHC brought by Plaintiff Billie Thompson ("Thompson"), as personal representative of the Estate of Dusty Heishman ("Heishman") (Filing No. 54 at 8). The Medical Defendants sought dismissal asserting Thompson was required by the Indiana Medical Malpractice Act ("MMA") to first take those claim before a medical review panel. However, the Court denied the motion to dismiss as to all the other state law claims brought against the Medical Defendants. *Id.* The Medical

Defendants ask the Court to reconsider the dismissal Order and grant dismissal as to the remaining state law claims. For the following reasons, the Court **DENIES** the Medical Defendants' Motion for Reconsideration.

## I. LEGAL STANDARD

This Motion is properly classified as a motion to reconsider under Federal Rule of Civil Procedure 54(b) because no final judgment has been entered in this case. *See* Fed. R. Civ. P. 54(b) ("any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities").

The Court applies a similar standard as applied to motions to alter or amend a judgment under Rule 59(e). Motions to reconsider filed pursuant to Rule 54(b) or Rule 59(e) are for the purpose of correcting manifest errors of law or fact or to present newly discovered evidence not available at the time of briefing, and a motion to reconsider an order under Rule 54(b) is judged by largely the same standard as a motion to alter or amend a judgment under Rule 59(e). *Katz-Crank v. Haskett*, 2014 U.S. Dist. LEXIS 95144, at *6 (S.D. Ind. July 14, 2014); *Woods v. Resnick*, 725 F. Supp. 2d 809, 827–28 (W.D. Wis. 2010).

Motions to reconsider "serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *State Farm Fire & Cas. Co. v. Nokes*, 263 F.R.D. 518, 526 (N.D. Ind. 2009). The motion is to be used "where the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990) (citation omitted).

The purpose of a motion for reconsideration is to ask the court to reconsider matters "properly encompassed in a decision on the merits." *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 174 (1989). The motion "will be successful only where the movant clearly establishes: (1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment." *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 954 (7th Cir. 2013) (citation and quotation marks omitted). A manifest error "is not demonstrated by the disappointment of the losing party. It is the wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto v. Metropolitan Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (citation and quotation marks omitted).

"Reconsideration is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." *Ahmed v. Ashcroft*, 388 F.3d 247, 249 (7th Cir. 2004) (citation and quotation marks omitted). Relief pursuant to a motion to reconsider is an "extraordinary remed[y] reserved for the exceptional case." *Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008).

## II. DISCUSSION

The Court provides only a brief background of this case to begin its discussion. Thompson, representing the Estate of Heishman, filed this action alleging Fourth and Fourteenth Amendment violations pursuant to 42 U.S.C. § 1983, as well as numerous state law claims, surrounding Heishman's death following an arrest. The incident leading up to Heishman's arrest occurred on October 5, 2014, when Heishman was running through public streets naked. Law enforcement officers with the Indianapolis Metropolitan Police Department ("IMPD") responded to the incident, and Heishman was subsequently charged with resisting law enforcement, battery resulting in bodily injury, criminal mischief, and public nudity.

During the course of his arrest, Heishman did not readily cooperate with police, who in turn battered Heishman. Additionally, two civilian bystanders assisted the IMPD officers in containing Heishman. While trying to arrest Heishman, law enforcement officers used a Taser on his stomach and chest in an attempt to obtain compliance. This was not successful. At one point, officers held Heishman and directed him to the police transport wagon. However, once they got to the back of the transport wagon, Heishman stiffened his body, making it impossible for the officers to place him in the police vehicle. Heishman then put his feet on the vehicle and pushed back, resulting in the officers and Heishman stumbling backward. Eventually, multiple law enforcement officers were able to get Heishman to the ground and hold him there.

Medic Cope and his EMT partner were dispatched to the area in response to a complaint of an animal bite incident. Soon after Medic Cope arrived at the scene, an IMPD officer approached him and asked that he first help with another person who was being combative. Medic Cope followed the officer and observed that Heishman was lying prone in the middle of the street, was handcuffed behind his back with leg shackles on, and had been tased. Medic Cope also observed that Heishman was struggling and fighting with officers who were holding him down. An officer indicated that he believed Heishman was intoxicated on PCP or other drugs. Medic Cope gave Heishman ten milligrams of Versed intramuscularly in his left deltoid muscle as a "chemical restraint for patient and crew safety." (Filing No. 27-1 at 2.) Within a couple of minutes after the injection, Heishman calmed down.

The IMPD and EMS crews picked up Heishman and placed him on a cot, laying him on his back. He was covered with a blanket and moved toward the ambulance. While moving to the ambulance, it became apparent that Heishman was no longer breathing, but it was difficult to assess his condition because of the darkness outside. Heishman's handcuffs and Taser probes were

removed after he was placed inside the ambulance. CPR was started because Heishman had gone into respiratory and cardiac arrest. After approximately seven minutes of CPR, Heishman was revived. He was transported to Eskenazi Hospital and then transferred to Methodist Hospital the following day. Heishman had lost brain function and was treated with hypothermic therapy in an attempt to recover brain function. The attempts were futile, and Heishman died on October 13, 2014.

On September 28, 2015, Thompson filed this action on behalf of the Estate of Heishman, alleging constitutional claims and state law claims against the Medical Defendants and other co-defendants. The Medical Defendants moved to dismiss the state law claims against them, asserting that the Court lacked subject matter jurisdiction based on Indiana's Medical Malpractice Act, which requires plaintiffs to first present state law medical negligence claims to a medical review panel before bringing the claims to court. The Court granted in part and denied in part the Medical Defendants' motion to dismiss, explaining that, with the exception of the wrongful death claim against HHC, the claims did not fall under the Medical Malpractice Act, and thus, the Court had subject matter jurisdiction to consider the claims ([Filing No. 54 at 8](Filing No. 54 at 8)).

The Medical Defendants filed their Motion for Reconsideration, arguing that the Court misunderstood the facts concerning the medical care provided by Medic Cope to Heishman, explaining that Medic Cope was not assisting law enforcement to effectuate an arrest, but rather, he was rendering medical treatment to Heishman for Heishman's medical benefit. They argue that "the Court failed in its understanding of the facts of the case, by placing too much emphasis on the term 'chemical restraint,' and interpreting the use of that term as being one used by law enforcement rather than by a medical professional." ([Filing No. 60 at 9](Filing No. 60 at 9).)

The Medical Defendants explain that additional discovery has been conducted, and new facts have been revealed, which support a determination that Medic Cope was acting in his professional capacity as a medical provider when he administered the Versed to Heishman and that he was not a member of law enforcement effectuating an arrest. They explain that the testimonies of the medical examiner (Dr. Thomas Sozio), Medic Cope, and EMT Josue Ceballos indicate that Heishman was in a state of excited delirium, which is a medical emergency, when Medic Cope administered Versed. This medical emergency required the administration of the Versed. The Medical Defendants also point to Thompson's own expert witness testimonies from Dennis Waller and Robert Belloto, which support the assertion that Heishman was in a state of excited delirium, which requires medical attention ([Filing No. 75-1 at 3](Filing No. 75-1 at 3), 6; [Filing No. 75-2](Filing No. 75-2)).

The Medical Defendants further explain that Medic Cope conducted a "medical assessment" of Heishman to determine his condition. The medication was administered for Heishman's medical benefit in accordance with Medic Cope's medical judgment. Quoting from Medic Cope's deposition testimony, the Medical Defendants explain, "[I]t appeared to be that he needed to be chemically restrained for his safety, for our safety, because we wouldn't be able to transport him to the hospital in that condition. So I gave him 10 milligrams of Versed IM, intramuscular." ([Filing No. 60 at 5](Filing No. 60 at 5).) Further, "[w]hen asked why he simply did not wait for Heishman to simply 'tire out,' Medic Cope explained: 'In cases . . . that appear to be excited delirium, they will eventually tire out, and that means cardiac arrest. So getting them subdued, giving them a sedative would be the first line treatment.'" *Id.* at 6.

The Medical Defendants also point to the new testimony of law enforcement officers Philip Greene, Brian Burnett, and Billy Johnson ("Sergeant Johnson") to assert that law enforcement

officers did not ask Medic Cope to provide the sedative to Heishman. They contend that the officers did not ask Medic Cope to assist with the arrest by administering a chemical restraint.

Additionally, the Medical Defendants point out that Thompson filed a complaint and amended complaint with the Indiana Department of Insurance, asserting claims for medical negligence based on the incidents surrounding Heishman's death. These filings were submitted on August 31, 2016 and September 9, 2016 ([Filing No. 76-1](); [Filing No. 76-2]()). The filings bring claims for injury and wrongful death resulting from medical treatment that fell below the applicable standard of care. The Medical Defendants argue that these filings with the Indiana Department of Insurance constitute judicial admissions by Thompson that the state law claims fall under the Medical Malpractice Act and should have been raised first with the medical review panel. Only after the Court issued its Order on the motion to dismiss—allowing the claims against Medic Cope to go forward—did Thompson amend the complaint to remove Medic Cope as a defendant in the administrative proceeding. The Medical Defendants assert that these judicial admissions require the Court to dismiss the state law claims for lack of subject matter jurisdiction pursuant to their Motion for Reconsideration.

In response to the Motion for Reconsideration, Thompson asserts the Court did not misunderstand the facts and correctly determined the state law claims did not fall under the Medical Malpractice Act. Thompson explains that the Court correctly determined Medic Cope was assisting law enforcement officers to restrain a combative and resisting arrestee when Medic Cope administered Versed to Heishman to calm him down. Thompson contends, "The facts and reasonable inferences demonstrate that Medic Cope was acting as an agent of law enforcement to obtain Mr. Heishman's physical compliance through a chemical restraint. His efforts were a

continuation of law enforcement's efforts to detain, restrain, and transport Mr. Heishman." (Filing No. 67 at 6.)

Thompson points to Billy Johnson's (the sergeant who drove the police transport wagon) deposition testimony to support the assertion that Medic Cope's efforts were a continuation of law enforcement officers' efforts to arrest Heishman. After Sergeant Johnson arrived with the transport wagon, leg shackles were applied to Heishman, and he was moved to the back of the wagon. Heishman pushed back with his legs on the wagon, knocking the police officers off balance. Sergeant Johnson then said to another sergeant on scene, "I'm not going to be able to take him for safety reasons." (Filing No. 68-2 at 7.) Sergeant Johnson further testified, "I said I'm not going to be able to transport him, and they requested a medic." *Id.* at 9. When asked what the objective was concerning Heishman, Sergeant Johnson explained that, first it was to put him into the police transport wagon, and when that was unsuccessful, "just to hold him down and restrain him until the medics arrived." *Id.* at 22. When asked where Heishman would be transported to, Sergeant Johnson explained, "Probably to Eskenazi [Hospital]. He was too intoxicated or too out of control probably for the APC [Arrestee Processing Center]." *Id.* Thompson explained that Officer Donald Spiegel confirmed that there was a conversation among the law enforcement officers and the EMTs after Medic Cope arrived at the scene (Filing No. 68-1 at 8).

Thompson asserts that, while the parties dispute how the facts should be viewed, the evidence demonstrates that law enforcement officers made a determination that Heishman could not be safely transported in the police transport wagon and contacted medics. When Medic Cope arrived at the scene, there was a discussion among him and the law enforcement officers. Shortly thereafter, Medic Cope observed that Heishman was resisting the officers, and he administered

8

Versed as a chemical restraint for the protection of Heishman and the crew. Thompson argues that these facts support the Court's initial determination that Medic Cope was assisting law enforcement officers to effectuate an arrest, and thus, his actions fall outside the reach of the Medical Malpractice Act, and this Court has subject matter jurisdiction over the state law claims.

Responding to the Medical Defendants' argument that Thompson made judicial admissions or statements against her interest in her filings with the Indiana Department of Insurance, Thompson explains that her filings with the Indiana Department of Insurance simply were arguments made in the alternative to the Complaint in this action, which is permitted in the Federal Rules of Civil Procedure and the Indiana Rules of Trial Procedure. She asserts that the Rules permit parties to bring multiple inconsistent claims in the alternative in their pleadings, pointing to Federal Rule of Civil Procedure 8(d)(2) and (3) and Indiana Rule of Trial Procedure 8(E)(2).

Thompson points out that her administrative filings explicitly referenced this action, noted the claims raised in this action, and explained that the claims were the subject of the Medical Defendants' then pending motion to dismiss. She explains that it was clear in the filings that the claims were being asserted in the alternative, not as judicial admissions or statements against interest. After the Court denied the motion to dismiss and allowed the claims against Medic Cope to proceed, Thompson promptly amended her administrative complaint to remove Medic Cope from that proceeding. She asserts that the later-filed administrative complaints clearly convey Thompson's intent to preserve her claims in the alternative because the statute of limitations was close to expiration, and this Court had yet to rule on the state law claims.

Furthermore, Thompson argues that the administrative filings were not judicial admissions or statements against interest requiring the Court to reconsider its previous Order. She notes, "Judicial admissions are formal concessions in the pleadings, or stipulations by the party or its

counsel, that are binding upon the party making them." *Help at Home, Inc. v. Med. Capital, L.L.C.*, 260 F.3d 748, 753 (7th Cir. 2001) (citation and quotation marks omitted). "Judicial admissions may be contained in stipulations, current pleadings *in the case being tried*, admissions made in open court, and admissions made pursuant to requests to admit." *Stewart v. Alunday*, 53 N.E.3d 562, 568 (Ind. Ct. App. 2016) (emphasis added). The Indiana Court of Appeals further noted, evidentiary admissions, which have a different legal effect than judicial admissions, include "pleadings in a case other than the one being tried." *Id.* Because she was pleading in the alternative, which is permissible, and she was not making a judicial admission, Thompson argues that her filings with the Indiana Department of Insurance do not require dismissal of the state law claims against the Medical Defendants.

After reviewing the parties' arguments and evidence, the Court has determined that no manifest error of law or fact was committed by the Court when it issued its Order on the Medical Defendants' Partial Motion to Dismiss. The new evidence submitted by both parties supports the Court's previous evidentiary determination that Medic Cope was assisting law enforcement officers in the ongoing attempt to effectuate Heishman's arrest. The Medical Defendants present the facts in a light that attempts to portray Medic Cope's actions solely in the context of a medical provider giving medical treatment to an individual experiencing a medical emergency. However, the Medical Defendants' portrayal of the facts ignores many important facts that give the full context of the situation that led to Heishman's death.

The fact that Heishman may have been in a state of excited delirium and that Medic Cope called upon his medical experience and judgment to make decisions on how to address the situation does not negate the overarching fact that Medic Cope was asked by law enforcement officers to assist them in dealing with a combative, resisting arrestee.

10

The testimony of Sergeant Johnson noted above strongly supports the Court's determination that Medic Cope was assisting in effectuating an arrest, even if Medic Cope intended to take Heishman to the hospital. It appears that Eskenazi Hospital was an appropriate place to take an arrestee who was in a state of intoxication or excited delirium until the arrestee could be safely processed by law enforcement.

The Medical Defendants provide in their brief the following exchange from Medic Cope's deposition: "At what point did you determine that he needed medical care?" "As soon as I saw that he was trying to be restrained and being combative against the officers." (Filing No. 60 at 11.) The Court finds this response telling regarding Medic Cope's role during the arrest and incident. An individual does not require medical care because they are evading restraint and being combative against law enforcement officers. Yet, this is the reason Medic Cope provided as to why he needed to provide "medical care" to Heishman. This testimony further supports the Court's earlier decision on the motion to dismiss, finding that Medic Cope was assisting law enforcement officers to effectuate an arrest.

The Court briefly notes that, considering the Federal and Indiana state Rules and the case law cited by Thompson, Thompson's filings in the separate administrative action are not judicial admissions in this action but rather constitute a pleading in the alternative, and thus, they do not provide a basis to find a manifest error of law or fact in the Court's previous Order.

### III. CONCLUSION

For the foregoing reasons, the Court determines that it did not commit a manifest error of law or fact in its previous Order denying the Medical Defendants' motion to dismiss, and the newly submitted evidence does not justify an amendment or alteration to the Court's previous Order.

Therefore, the Medical Defendants' Motion for Reconsideration of the Court's Order on Defendants' Partial Motion to Dismiss (Filing No. 59) is **DENIED**.

    **SO ORDERED.**

Date: 9/19/2017

*[signature]*

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Scott Leroy Barnhart
ATTORNEY AT LAW
barnhart@kbindy.com

Brooke Smith
KEFFER BARNHART LLP
Smith@KBindy.com

Mary M. Ruth Feldhake
BOSE MCKINNEY & EVANS, LLP
mfeldhake@boselaw.com

Philip R. Zimmerly
BOSE MCKINNEY & EVANS, LLP
pzimmerly@boselaw.com

Andrew J. Upchurch
OFFICE OF CORPORATION COUNSEL
andrew.upchurch@indy.gov

Thomas J.O. Moore
OFFICE OF CORPORATION COUNSEL
thomas.moore@indy.gov

Andrew R. Duncan
RUCKELSHAUS KAUTZMAN
BLACKWELL BEMIS & HASBROOK
ard@rucklaw.com

Edward J. Merchant
RUCKELSHAUS KAUTZMAN
BLACKWELL BEMIS & HASBROOK
ejm@rucklaw.com

John F. Kautzman
RUCKELSHAUS KAUTZMAN
BLACKWELL BEMIS & HASBROOK
jfk@rucklaw.com