# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | |
|---|---|
| BILLIE THOMPSON, as personal representative of the ESTATE OF DUSTY HEISHMAN,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF INDIANAPOLIS, INDIANAPOLIS DEPARTMENT OF PUBLIC SAFETY, INDIANAPOLIS METROPOLITAN POLICE DEPARTMENT, BRIAN BURNETT, DONALD SPIEGL, WILLIAM BUECKERS, PHILLIP GREENE, MARION COUNTY SHERIFF'S DEPARTMENT, BILLY JOHNSON, HEALTH AND HOSPITAL CORPORATION OF MARION COUNTY, LANCE COPE, MARK BRITTON, and WILLIAM PATTERSON,<br><br>Defendants. | ) ) ) ) ) ) ) Case No. 1:15-cv-01712-TWP-DML ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

## ENTRY ON MEDICAL DEFENDANTS' MOTION
## FOR PARTIAL SUMMARY JUDGMENT

This matter is before the Court on a Motion for Partial Summary Judgment filed pursuant to Federal Rule of Civil Procedure 56 by Defendants Health and Hospital Corporation of Marion County ("HHC") and Lance Cope ("Medic Cope") (collectively, "Medical Defendants") (Filing No. 95). Plaintiff Billie Thompson ("Thompson"), as personal representative of the Estate of Dusty Heishman ("Heishman"), filed this action alleging numerous state law claims and Fourth and Fourteenth Amendment violations pursuant to 42 U.S.C. § 1983 ("Section 1983") after Heishman died following an arrest. Thompson's Section 1983 claims are for excessive force, deliberate indifference, and failure to protect or intervene. The Medical Defendants ask for summary judgment on the Section 1983 claims, arguing that Medic Cope is entitled to qualified

immunity.  For the following reasons, the Court **grants in part and denies in part** the Medical Defendants' Motion for Partial Summary Judgment.

## I.    BACKGROUND

The following facts are not necessarily objectively true, but, as required by Federal Rule of Civil Procedure 56, the facts are presented in the light most favorable to Thompson as the non-moving party.  *See Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

On the evening of October 5, 2014, at approximately 7:45 p.m., a grandmother of young children called 911 to alert police to the belligerent and erratic behavior of a man who was naked and out on the streets near Bryants Friendly Inn, near Iowa and East Streets in Indianapolis, Indiana.  (Filing No. 97-9 at 2–3.)  Officer Brian Burnett ("Offer Burnett") was in the area and received the dispatch call to take care of the incident.  Officer Burnett went to the scene and found the naked man, who was identified as Heishman.  Heishman was sweating profusely, and it appeared to Officer Burnett that Heishman was under the influence of narcotics (Filing No. 97-2 at 7–10).

Heishman began to approach his police vehicle, so Officer Burnett quickly exited the vehicle and directed Heishman to calm down and to sit down on the ground.  Heishman did not respond to Officer Burnett, so Officer Burnett used his Taser to try to get compliance.  The Taser hit Heishman's stomach and torso area and knocked him to the ground.  Heishman pulled the wires out of the Taser and then jumped back onto his feet.  He tried to climb into the driver's seat of Officer Burnett's police vehicle, but Officer Burnett was able to lock the car with his key fob. When Heishman could not get into the car, he turned back toward Officer Burnett.  Officer Burnett continued to give verbal commands to calm down or sit down, but Heishman stared through him

and did not respond. Heishman repeatedly said "they're trying to kill me, they're trying to kill me". *Id.* at 8–14.

Officer Burnett requested help from two civilian bystanders who were on the sidewalk near his police vehicle. They immediately responded and tried to get Heishman on the ground. Heishman and the two civilians engaged in a physical struggle, and they were able to get Heishman to the ground. The civilians punched and hit Heishman during the physical altercation, and one of them choked Heishman. Officer Burnett attempted to handcuff Heishman, but the men still struggled to subdue him. Other law enforcement officers began arriving on the scene to assist with arresting Heishman and to move a gathering crowd away from the incident. They were successful at getting handcuffs on Heishman behind his back. *Id.* at 15–22; Filing No. 116-2 at 1. Once the handcuffs were secured on Heishman, he would calm down for moments and then begin to resist the officers again (Filing No. 116-1 at 9).

Sergeant Billy Johnson (from the Marion County Sheriff's Department) ("Sergeant Johnson") arrived on the scene with the police transport wagon after Heishman was already handcuffed. One of the officers asked for leg shackles, so Sergeant Johnson gave him leg shackles to apply to Heishman (Filing No. 116-4 at 5). Sergeant Johnson observed that Heishman was naked on the ground and had a number of officers around him who were holding him to maintain control over him. Sergeant Johnson observed that Heishman was face down on his stomach, and the scene was secure. Sergeant Johnson talked with Sergeant Ed Miller about a plan to get Heishman into the police transport wagon. The leg shackles were applied to Heishman, and then, with the assistance of approximately four other police officers, Sergeant Johnson walked Heishman to the back of the wagon. Heishman was very tense and stiffened his body, making it difficult to move him and to get him into the wagon. Heishman stepped up onto the step of the

wagon and then pushed back with his legs on the wagon, knocking the police officers off balance. The officers were able to get Heishman back to the ground and hold him there. *Id.* at 5–7.

Sergeant Johnson then said to Sergeant Miller, "I'm not going to be able to take him for safety reasons." (Filing No. 116-4 at 7.) Sergeant Johnson explained, "I'm not going to be able to transport him, and they requested a medic." *Id.* at 9. Sergeant Johnson later indicated, "It just was to[o] unsafe in his condition to put him in a cage in the back of a wagon and transport him and then try to get him out at the APC so for my safety and his safety a medic was summoned." (Filing No. 116-5 at 3.) Officer Burnett also explained that, after the officers could not get Heishman into the wagon, the officers "just knew that he wasn't getting in the wagon, so we said the only other choice is to get him on a cot." (Filing No. 116-1 at 11.)

When asked what the objective was concerning Heishman, Sergeant Johnson explained that, first it was to put him into the police transport wagon, and when that was unsuccessful, "just to hold him down and restrain him until the medics arrived." (Filing No. 116-4 at 22.) When asked where Heishman would be transported, Sergeant Johnson explained, "Probably to Eskenazi [Hospital]. He was too intoxicated or too out of control probably for the APC [Arrestee Processing Center]." *Id.* The Marion County Sheriff's Department "maintain[s] custody over prisoners at the Eskenazi Hospital. . . . [T]hat's where people under arrest go. . . . [W]e have a specially built holding room out there just for people in custody." *Id.* at 14.

While waiting for a medic, Heishman was held on the ground face down on his stomach with approximately four officers staying in physical contact with him. He occasionally pushed back on the officers who were holding him. Approximately three to five minutes later, medics arrived on the scene. *Id.* at 9–10.

Medic Cope and his EMT partner, Josue Ceballos, were dispatched to the area in response to a complaint of an animal bite incident. They arrived at the scene at approximately 8:02 p.m. and learned that the animal bite patient was a police officer. (Filing No. 116-7 at 1). Medic Cope eventually learned that the incident did not involve an animal, but rather, Heishman had bitten an officer (Filing No. 116-6 at 15). Almost immediately after arriving on the scene, an officer from the Indianapolis Metropolitan Police Department ("IMPD") approached Medic Cope and asked that he first help with another person (Heishman) who was being combative. (Filing No. 116-7 at 1). He then called for another unit for the animal bite patient. *Id.* Medic Cope followed the officer and observed that Heishman was lying prone in the middle of the street, was handcuffed behind his back with leg shackles on, and had been tased. Medic Cope also observed that Heishman was struggling and fighting and approximately five police officers were holding him down (Filing No. 116-7 at 1). One officer stated that he believed Heishman was intoxicated on PCP or other drugs. Medic Cope received a brief rundown of the history of what happened before he arrived on the scene. He did a quick assessment of Heishman, checking his airway, breathing, circulation, and pulse. It appeared to Medic Cope that Heishman was under the influence of some type of amphetamines (Filing No. 116-6 at 6).

Medic Cope gave Heishman ten milligrams of Versed intramuscularly in his left deltoid muscle as a "chemical restraint for patient and crew safety." (Filing No. 116-7 at 1.) Within a couple of minutes after the injection, Heishman calmed down. Medic Cope was surprised by how quickly the Versed had an effect because normally it takes about ten minutes to be effective when injected intramuscularly. Medic Cope visually monitored Heishman during the couple of minutes while the Versed was taking effect, watching his breathing and watching for any struggling (Filing No. 116-6 at 16). No one monitored Heishman's vital signs or used medical devices to monitor

him; instead, he was left on the ground until it appeared the Versed had its effect ([Filing No. 116-4 at 23](#)).

The IMPD and EMS crews picked up Heishman and placed him on a cot, laying him on his back. He was covered with a blanket and moved toward the ambulance. While moving to the ambulance, it became apparent that Heishman was no longer breathing, but it was difficult to assess his condition because of the darkness outside. Once he was inside the ambulance, Medic Cope noted that Heishman was not breathing, and he had no pulse. Heishman's handcuffs and Taser probes were removed after he was placed inside the ambulance, and CPR was started because Heishman had gone into respiratory and cardiac arrest ([Filing No. 116-7 at 1](#)). After approximately seven minutes of CPR, Heishman was revived but not conscious. *Id.* at 3–4.

Heishman was transported to Eskenazi Hospital and then transferred to Methodist Hospital the following day. Heishman had lost brain function and was treated with hypothermic therapy in an attempt to recover brain function. The attempts were futile, and Heishman died on October 13, 2014 ([Filing No. 116-10 at 3](#)). His cause of death was noted as "complications of excited delirium" with contributing factors of "acute methamphetamine intoxication, positional body restraint by law enforcement, acute psychotic state (mania), dilated cardiomyopathy, discharge by electric stun device, and history of grand mal seizure disorder." *Id.* at 1.

After the incident on October 5, 2014, but before Heishman's death, Heishman was charged with resisting law enforcement, battery resulting in bodily injury, criminal mischief, and public nudity ([Filing No. 116-2 at 1](#)). After his death, the charges against Heishman were dropped. On September 28, 2015, Thompson, representing the Estate of Heishman, filed this action alleging Fourth and Fourteenth Amendment violations pursuant to Section 1983, as well as numerous state law claims, against the Medical Defendants and other co-defendants. Thompson's Section 1983

claims against Medic Cope allege excessive force, deliberate indifference, and failure to protect or intervene. Thompson did not bring Section 1983 claims against HHC. The Medical Defendants seek summary judgment on the three constitutional claims against Medic Cope, asserting that he is entitled to qualified immunity.

## II.    SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted). "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted). Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox County Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

"In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of [the] claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citations and quotation

marks omitted). "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and quotation marks omitted).

## III.    DISCUSSION

The Medical Defendants request summary judgment on each of Thompson's constitutional claims—excessive force, deliberate indifference, and failure to protect or intervene—on the basis that qualified immunity protects Medic Cope. They also assert that these same claims against Medic Cope in his official capacity must be dismissed. The Court will address each claim in turn.

### A.    Official Capacity Claims

The Medical Defendants point out that Thompson has pled her claims against Medic Cope in both his individual and official capacities. Thompson asserts that a "[s]uit against an officer in his official capacity is treated as suit against the municipality itself." *Thompson v. Ciesielski*, 2013 U.S. Dist. LEXIS 29447, at *7 (S.D. Ind. Mar. 4, 2013). Thompson further asserts that municipalities are liable under Section 1983 only if the municipality itself caused the constitutional violation; there is no *respondeat superior* or other derivative liability under Section 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691–94 (1978).

The Medical Defendants argue that Thompson has not established any violation of Heishman's constitutional rights by Medic Cope, and she has not alleged or identified in the Complaint or Statement of Claims any constitutional claim against HHC. The Medical Defendants argue that, "because there is no underlying constitutional violation, the City cannot be liable under *Monell*," *Sallenger v. City of Springfield*, 630 F.3d 499, 505 (7th Cir. 2010), and thus, any Section

1983 claims asserted by Thompson against HHC or Medic Cope in his official capacity are inappropriate and must be dismissed.

Responding to the Medical Defendants' argument concerning any official capacity claims, Thompson concedes, "With respect to Defendant's claim as it relates to Plaintiff's official capacity claim, Plaintiff has not brought a *Monell* claim in this action." (Filing No. 115 at 23.)

Because the law is in favor of the Medical Defendants on this issue and because Thompson acknowledges that she has not brought a Section 1983 official capacity claim against the Medical Defendants, the Court **grants** the Motion for Partial Summary Judgment to the extent the constitutional claims could be interpreted as being brought against Medic Cope in his official capacity. Therefore, any official capacity claims brought under Section 1983 against Medic Cope or HHC are **dismissed**.

**B.      Claim for Excessive Force**

The Medical Defendants argue that Medic Cope is entitled to qualified immunity against all three of the constitutional claims asserted against him. They explain, "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citation and quotation marks omitted). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Stanton v. Sims*, 134 S. Ct. 3, 5 (2013) (citations and quotation marks omitted).

In determining whether qualified immunity applies, courts decide "whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right," and "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson*, 555 U.S.

at 232.  "Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right."  *Id.*  The Medical Defendants argue that Thompson's claims fail under both prongs of the qualified immunity test:  Medic Cope did not violate any of Heishman's constitutional rights when he provided emergency medical care to Heishman, and even if constitutional rights were violated, those rights were not clearly established at the time of Medic Cope's actions.

Concerning the excessive force claim, the Medical Defendants assert Thompson has failed to demonstrate that the "administration of a sedative by a paramedic to a patient in a state of excited delirium amounts to a constitutional violation."  (Filing No. 96 at 10.)  Pointing to a decision from a court in Oregon, the Medical Defendants explain there is a distinction between officers acting in a law enforcement capacity and in an emergency medical responder capacity, and a government actor who restrains somebody to render medical assistance does not seize the individual for Fourth Amendment purposes.  *See Frank v. Cascade Healthcare Cmty., Inc.*, 2014 U.S. Dist. LEXIS 23822, at *13 (D. Or. Feb. 23, 2014).  The Medical Defendants also quote the Sixth Circuit to explain, "[W]here the purpose is to render solicited aid in an emergency rather than to enforce the law, punish, deter, or incarcerate, there is no federal case authority creating a constitutional liability . . . ."  *Peete v. Metro. Gov't*, 486 F.3d 217, 221 (6th Cir. 2007).

The Medical Defendants argue that Heishman was in a state of excited delirium, which is a medical emergency, induced by his drug use, at the time that Medic Cope arrived on the scene, assessed Heishman's condition, and determined that it was necessary to administer Versed for Heishman's medical treatment.  They point to the testimony of Medic Cope that he believed Heishman was in a state of excited delirium.  They also point to the testimony of Dr. Thomas Sozio, the medical examiner who conducted Heishman's autopsy, who explained that Heishman

experienced excited delirium and the appropriate medical response to such a condition is to use a chemical restraint. The Medical Defendants assert that Medic Cope acted as a medical emergency responder and not as law enforcement officer effectuating an arrest. Thus, they argue, Medic Cope's actions do not implicate the Fourth Amendment.

The Medical Defendants also argue that, even if Thompson can show a constitutional violation, Medic Cope is still entitled to qualified immunity because his conduct did not violate a clearly established right because a "reasonable paramedic would not have understood that providing a sedative to a patient in a state of excited delirium to calm the patient and to prevent further harm would violate the patient's Fourth Amendment rights." (Filing No. 96 at 12.)

In response, Thompson asserts the evidence demonstrates that Medic Cope was not providing medical care but rather was acting as an agent of law enforcement with the purpose of effectuating Heishman's arrest through use of a chemical restraint. Thompson points to evidence that Heishman was handcuffed and shackled at the time that Medic Cope administered the Versed as a chemical restraint for Heishman's and the crew's safety. Thompson points out that, when the Versed was administered, Heishman was not actively fighting the officers. The officers had determined that Heishman could not be put in the police transport wagon to be taken to the Arrestee Processing Center, but rather, he would need to be transported to the Sheriff's holding room at Eskenazi Hospital.

Thompson notes, "[T]he right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989). However, the right has limits; a "police officer's use of force is unconstitutional if, judging from the totality of circumstances at the time of the arrest, the officer used greater force

than was reasonably necessary to make the arrest." *Payne v. Pauley*, 337 F.3d 767, 778 (7th Cir. 2003) (citation and quotation marks omitted).

Thompson argues that Medic Cope does not and cannot contend that deadly force was justified once officers had secured Heishman by handcuffing and shackling him; it is clearly established that deadly force is justified only when an official has probable cause to believe that the suspect poses a threat of serious physical harm to the officer or others. *Tennessee v. Garner*, 471 U.S. 1, 8–9 (1985). Thompson points to the analogous case of *Abdullahi v. City of Madison*, 423 F.3d 763 (7th Cir. 2005), where an officer knelt on the arrestee's back and shoulder area after the arrestee already was laying prone on the ground. The arrestee died approximately two minutes later. The Seventh Circuit determined that there was a disputed fact that should go to trial regarding the reasonableness of the force used and whether it was excessive.

Thompson asserts that, during the course of the arrest, Medic Cope injected Heishman with a chemical restraint after discussing the situation with law enforcement offices. Medic Cope did not take Heishman's blood pressure at that time. Heishman was laying prone on the ground and not actively fighting the officers or Medic Cope. After the injection, no one monitored Heishman's vital signs; rather, they let him lay there. Thompson argues, "there can be no reasonable dispute that it is unreasonable for a medic to aid law enforcement in an arrest by chemically restraining a handcuffed and shackled individual without monitoring the individual or being in a location where he could fully assess the individual's reaction to the chemical." (Filing No. 115 at 15.) Thus, Thompson explains, Medic Cope's use of a chemical restraint to help effectuate Heishman's arrest was unreasonable and an excessive use of force. Therefore, Medic Cope should not be entitled to qualified immunity.

The Court previously considered and addressed the parties' arguments regarding the context and status of Medic Cope's participation in the events of October 5, 2014, which led to Heishman's death. The parties presented these arguments when litigating the Medical Defendants' partial motion to dismiss and motion for reconsideration. The Court determined that Medic Cope's role was that of assisting law enforcement officers in effectuating Heishman's arrest, not rendering emergency medical services, at the time that Medic Cope administered the Versed. For further discussion and analysis of this issue, the Court directs the parties to Filing No. 54 and Filing No. 149.

It is in this context—Medic Cope assisting law enforcement officers in effectuating Heishman's arrest—that the Court determines Medic Cope is not entitled to qualified immunity against Thompson's claim for excessive force. Case law has clearly established a constitutional right that officers cannot use excessive force in effectuating an arrest. *See, e.g.*, *Graham*, 490 U.S. 386; *Tennessee*, 471 U.S. 1; *Abdullahi*, 423 F.3d 763; *Payne*, 337 F.3d 767.

The designated evidence, viewed in the light most favorable to Thompson as the non-moving party, shows that Heishman was lying prone on the ground, handcuffed and leg-shackled, with approximately five law enforcement officers holding him at the time that Medic Cope administered Versed as a chemical restraint. The evidence suggests that, when he initially arrived on the scene, Medic Cope observed Heishman resisting the officers, but at the time he administered the Versed, Heishman was not fighting the officers; he was tense and pushing back, but the officers had control of him (Filing No. 116-4 at 10). Based on this evidence and the circumstances of this case, the Court concludes that the force used by Medic Cope to incapacitate Heishman and to assist in arresting him was unreasonable, and thus, Medic Cope is not entitled to qualified immunity

against the Section 1983 claim for excessive force. Therefore, the Court **denies** the Medical Defendants' Motion for Partial Summary Judgment on the excessive force claim.

**C.**     **Claim for Deliberate Indifference**

Next, the Medical Defendants argue that Medic Cope is entitled to qualified immunity against Thompson's claim for deliberate indifference. They point out that, although Thompson has pled this claim as one for "deliberate indifference," the proper standard for an arrestee's claims under the Fourth and Fourteenth Amendments is "objective unreasonableness." *See Lopez v. City of Chicago*, 464 F.3d 711, 718–20 (7th Cir. 2006) (the more demanding deliberate indifference standard is applicable to convicted prisoners and pretrial detainees, whereas the objective unreasonableness standard is applicable to arrestees).

The Medical Defendants explain that, to determine whether Medic Cope's response to Heishman's medical needs was objectively unreasonable, the Court must consider: (1) whether Medic Cope had notice of Heishman's medical needs; (2) the seriousness of the medical needs; (3) the scope of the requested treatment; and (4) police interests, including administrative, penological, or investigatory concerns. *Williams v. Rodriguez*, 509 F.3d 392, 403 (7th Cir. 2007). Thompson must also show that Medic Cope's conduct caused the harm of which she complains. *Ortiz v. City of Chicago*, 656 F.3d 523, 530 (7th Cir. 2011).

Considering the designated evidence, the Medical Defendants assert that nothing indicates Medic Cope's actions were objectively unreasonable, but rather, his actions were medically reasonable and appropriate as testified to by Dr. Sozio (Filing No. 97-7 at 19). Medic Cope understood that Heishman was in a state of excited delirium from drug intoxication and the appropriate response was to administer a sedative to calm down Heishman. Medic Cope did this and then moved Heishman to the ambulance. Once it was determined that Heishman was in

cardiac and respiratory arrest, CPR was started, and Heishman was transported to the hospital for further treatment. The Medical Defendants argue that Medic Cope's conduct cannot be viewed as objectively unreasonable, and thus, no constitutional violation occurred. They argue that, even if a constitutional violation could be shown, the constitutional claim is not clearly established because a paramedic's decision to provide a patient who is in a state of excited delirium with a sedative does not amount to a violation of a clearly established right. Thus, they assert, Medic Cope is entitled to qualified immunity against Thompson's deliberate indifference/objective unreasonableness claim.

Responding to this argument, Thompson asserts, "A reasonable jury could conclude that Cope was deliberately indifferent to a serious medical need." (Filing No. 115 at 15.) Thompson then explains that Medic Cope knew at the time that he administered the Versed that Heishman was handcuffed behind his back and leg-shackled, laying prone on the ground. Medic Cope suspected that he was intoxicated from amphetamines, and he knew that Heishman had been struggling with officers and had been tased in the chest and stomach. Thompson claims, "As such, it can be reasonably inferred that Cope knew that [Heishman] had medical needs and that those medical needs were serious." *Id.* at 16.

Thompson then notes that Heishman did not request medical treatment, but Medic Cope conferred with law enforcement officers and then administered the chemical restraint. Heishman was left in the prone position while he calmed down, and his vital signs were not monitored. Thompson asserts that Medic Cope even admitted that he chemically restrained Heishman in a dark location where he could not fully assess Heishman. Thompson points to the case of *Williams v. Rodriguez* as a similar case of deliberate indifference to a medical need. She explains that in *Williams*, the arrestee had asthma and required an inhaler. An inhaler was provided to the arresting

officer to give to the arrestee, but the officer never provided the inhaler. *See Williams*, 509 F.3d at 401–03. Thompson asserts that such is the case here, where Medic Cope knew of a serious medical need and ignored the distress Heishman was under and administered a chemical restraint to effectuate the arrest.

This second claim requires the Court to consider Medic Cope's response to Heishman's medical needs rather than Medic Cope's actions in the context of excessive force in helping to effectuate an arrest. The designated evidence shows that when Medic Cope arrived on the scene, he was almost immediately asked to go over to Heishman. He was informed of the struggle that had ensued between Heishman and the officers. He learned that a Taser had been utilized and that an officer believed Heishman was intoxicated on drugs. Medic Cope opined that Heishman was under the influence of amphetamines.

The undisputed evidence shows that Medic Cope quickly assessed Heishman, which included focusing on his "airway, breathing, circulation. Airway was intact. He was breathing. Circulation wise, yes, he did have a pulse." (Filing No. 116-6 at 6.) Medic Cope determined that Heishman's pulse was tachycardic, meaning that he had a very high pulse in the area of 120. *Id.* at 7. Medic Cope tried to assess Heishman's level of consciousness, and he was awake enough to fight the officers. *Id.* at 6.

Medic Cope was unable to do any other assessment, such as taking a blood pressure reading, because Heishman was continuing to struggle. Medic Cope looked at the back of Heishman's head to see if there was any head trauma, and it did not appear that there was any head trauma, but it was difficult to see Heishman's face because he was face down. Medic Cope asked Heishman if he was okay, but Heishman did not respond and instead continued to struggle against the officers. *Id.*

After making his assessment, Medic Cope determined that Heishman would need to be chemically restrained for his safety and the safety of the crew to be able to transport him to the detention unit at the hospital for treatment. He determined that administering the Versed intramuscularly would be the safest method. The Versed was then administered in Heishman's left deltoid muscle. *Id.* When Medic Cope was later asked why he did not wait for Heishman to simply "tire out," he explained, "In cases . . . that appear to be excited delirium, they will eventually tire out, and that tire out means cardiac arrest. So getting them subdued, giving them a sedative would be the first line treatment." (Filing No. 116-6 at 8.)

After administering the drug, Medic Cope visually monitored Heishman during the couple of minutes while the Versed was taking effect, watching his breathing and watching for any struggling. *Id.* at 16. Heishman became still and subdued but was breathing. *Id.* at 8. Medic Cope and the officers then rolled Heishman onto his back and placed him on the stretcher. *Id.*

The designated evidence indicates that Heishman was covered with a blanket and moved toward the ambulance. While moving to the ambulance, it became apparent that Heishman was no longer breathing. Once he was inside the ambulance, Medic Cope confirmed that Heishman was not breathing, and he had no pulse. Heishman's handcuffs and Taser probes were removed, and CPR was started (Filing No. 116-7 at 1). After approximately seven minutes of CPR, Heishman was revived but not conscious. *Id.* at 3–4. Medic Cope continued to provide medical treatment to Heishman while he was being transported to Eskenazi Hospital, where he was then transferred into the hospital's care. *Id.* at 1–4.

It appears that Thompson's claim focuses on an alleged lack of treatment when Medic Cope first arrived on the scene as well as the decision to leave Heishman in a prone position while he calmed down. The designated evidence noted above makes clear that Medic Cope—who was

facing an emergency situation—quickly assessed Heishman's condition and tried to communicate with him. Medic Cope did not observe injuries that required some medical care that was not provided. Thus, the evidence leads to the determination that the medical care provided when Medic Cope first arrived on the scene was reasonable.

Concerning the decision to leave Heishman in a prone position while he calmed down, the evidence makes clear that Medic Cope continued to monitor Heishman, he was still breathing, and Heishman had been combative, so they needed to allow Heishman to calm down before moving him. This too was reasonable. Additionally, Medic Cope's medical decision to administer the Versed was reasonable based on the circumstances before him, where Heishman was in a state of excited delirium and had been combative. Once the Versed was administered, Medic Cope monitored Heishman and provided additional, necessary medical treatment as the situation unfolded. Based on the designated evidence, Medic Cope's medical care was objectively reasonable under the circumstances. Therefore, Medic Cope is entitled to qualified immunity against Thompson's claim for deliberate indifference/objective unreasonableness. The Court **grants** the Medical Defendants' Motion for Partial Summary Judgment on this claim.

## D.     Claim for Failure to Protect or Intervene

Finally, the Medical Defendants acknowledge that government actors may be held liable in some situations where they fail to intervene when the constitutional rights of others are being violated. They explain:

> An officer who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under § 1983 if that officer had reason to know: (1) that excessive force was being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official; *and* the officer had a realistic opportunity to intervene to prevent the harm from occurring.

*Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994).

The Medical Defendants point to the analogous case of *Ramirez v. City of Chicago*, 82 F. Supp. 2d 836 (N.D. Ill. 1999), to support their position that Medic Cope cannot be held liable for a failure to intervene or protect because Medic Cope actually did intervene in this case. In *Ramirez*, the decedent, Omar Ramirez, was intoxicated by alcohol and cocaine, was sweating profusely, pacing the floor, and saying that people were trying to kill him. He kicked out a screen window and jumped two stories to the ground. He went to a bar across the street where he caused a disturbance. Police were called to the scene, and after they arrived, they handcuffed Ramirez, placed him in a prone position in the street, and beat him. Paramedics were called to the scene, but they refused to treat him or transport him in their ambulance to a hospital. As a result, the police officers transported Ramirez in a prone position in the back of one of their vehicles to a hospital where he was pronounced dead from asphyxiation. The district court denied qualified immunity to the paramedics for their inaction. *Id.* at 838–41.

The Medical Defendants assert that, when Medic Cope was presented with similar facts as those presented to the paramedics in *Ramirez*, Medic Cope did the right thing by intervening and providing a sedative to Heishman to calm him and to alleviate a situation that he believed placed Heishman at risk. Medic Cope took action to protect Heishman and to assure his safe transport to the hospital. The Medical Defendants explain that qualified immunity affords Medic Cope "breathing room to make reasonable but mistaken judgments," *Stanton*, 134 S. Ct. at 5, and his actions do not amount to a constitutional claim for failure to protect or intervene, so he is entitled to qualified immunity.

Thompson responds that Medic Cope has a duty as a paramedic to intervene or protect when he witnesses the excessive use of force, and in this case, he had a realistic opportunity to prevent harm from occurring. Thompson claims that the Medical Defendants' argument is

fundamentally flawed because it is premised on the foundation that Medic Cope provided medical care when he administered the Versed, but in reality, he was continuing the excessive force to effectuate the arrest. Thompson then asserts,

> In this case, a jury should decide whether the officers' actions of tasing, physically attacking, and keeping [Heishman] in the prone position for an extended period of time would have made it clear to Cope that actual and adequate medical treatment and/or removal from the prone position to facilitate breathing was warranted and that he had a realistic opportunity to intervene.

(Filing No. 115 at 21).

> Thompson also argues,

> While [Heishman] necessarily relied on Cope for medical care, Cope did not provide any substantive or adequate medical care, but rather administered an overdose of a chemical restraint after consulting with law enforcement, left [Heishman] in a prone position as he had been for some period of time, and failed to properly monitor him.

*Id.* at 22.

The designated evidence makes it clear that Medic Cope had no opportunity to intervene with the officers' actions of tasing, physically attacking, and keeping Heishman in the prone position for an extended period of time because all these actions and events occurred before Medic Cope arrived on the scene. The evidence indicates that, from the time Medic Cope arrived on scene until he administered the Versed, Heishman was on the ground in the prone position for approximately three minutes. During those three minutes, Heishman was pushing back against the officers, and Medic Cope was assessing him. Medic Cope observed that Heishman was still breathing and checked his airway and pulse. The undisputed evidence shows that Medic Cope could not have intervened or prevented the complained of conduct of the officers because he was not present until a later time.

Regarding Thompson's argument that Medic Cope failed to intervene because he did not provide any substantive or adequate medical care, this concern is analyzed and resolved in Section C above regarding the claim for deliberate indifference/objective unreasonableness of the medical care provided. The designated evidence shows that Medic Cope did in fact intervene when he arrived on the scene. Therefore, he is entitled to qualified immunity against the claim for failure to intervene, and the Motion for Partial Summary Judgment is **granted** as to this claim.

## IV.     CONCLUSION

For the reasons stated above, the Court **GRANTS in part and DENIES in part** the Medical Defendants' Motion for Partial Summary Judgment (Filing No. 95). Summary judgment is **GRANTED** in favor of the Medical Defendants on any official capacity claims brought under Section 1983. Summary judgment also is **GRANTED** in favor of the Medical Defendants on Thompson's claims for deliberate indifference/objective unreasonableness and a failure to intervene. However, Thompson's claim for excessive force against Medic Cope remains pending for trial in this litigation.

**SO ORDERED.**

Date:    9/25/2017

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Scott Leroy Barnhart
ATTORNEY AT LAW
barnhart@kbindy.com

Brooke Smith
KEFFER BARNHART LLP
Smith@KBindy.com

Thomas J.O. Moore
OFFICE OF CORPORATION COUNSEL
thomas.moore@indy.gov

Andrew R. Duncan
RUCKELSHAUS KAUTZMAN
BLACKWELL BEMIS & HASBROOK
ard@rucklaw.com

Mary M. Ruth Feldhake
BOSE MCKINNEY & EVANS, LLP
mfeldhake@boselaw.com

Philip R. Zimmerly
BOSE MCKINNEY & EVANS, LLP
pzimmerly@boselaw.com

Andrew J. Upchurch
OFFICE OF CORPORATION COUNSEL
andrew.upchurch@indy.gov

Edward J. Merchant
RUCKELSHAUS KAUTZMAN
BLACKWELL BEMIS & HASBROOK
ejm@rucklaw.com

John F. Kautzman
RUCKELSHAUS KAUTZMAN
BLACKWELL BEMIS & HASBROOK
jfk@rucklaw.com